UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TRUSTEES OF THE CHICAGO REGIONAL COUNCIL OF CARPENTERS PENSION FUND, CHICAGO REGIONAL COUNCIL OF CARPENTERS WELFARE FUND, and CHICAGO REGIONAL COUNCIL OF CARPENTERS APPRENTICE & TRAINEE PROGRAM FUND, | ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) | No. 09 C 983 |
| v. | ) ) ) ) | Judge Joan B. Gottschall |
| CMG COMMERCIAL FLOOR MAINTENANCE COMPANY, INC., | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION & ORDER

Plaintiffs, Trustees of the Chicago Regional Council of Carpenters Pension Fund, Chicago Regional Council of Carpenters Welfare Fund, and Chicago Regional Council of Carpenters Apprentice & Trainee Program Fund (collectively, the "Funds"), brought this action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), Pub. L. No. 93-406, 88 Stat. 829 (codified as amended in scattered sections of 5 U.S.C., 18 U.S.C., 26 U.S.C., 29 U.S.C., and 42 U.S.C.) and the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. §§ 141-197. The Funds seek various remedies for defendant CMG Commercial Floor Maintenance Company, Inc.'s ("CMG") failure to pay fringe benefits to the Funds for two CMG employees between February 2006 and March 2007. CMG admits that it did not pay the benefits at issue, but maintains that it never owed such payments. This matter is presently before the court on the parties'

cross-motions for summary judgment. The parties have fully briefed the issue, and, on July 2, 2010, the court heard oral argument. For the reasons stated within, the Funds' motion is granted in part and denied as moot in part, and CMG's motion is denied.

## I. FACTUAL BACKGROUND

On February 2, 2006, CMG, which operated a flooring business, entered into a Memorandum of Agreement (the "Memorandum") with the Chicago Regional Council of Carpenters (the "Union") regarding labor issues at CMG. (Def.'s Stmt. ¶¶ 2, 7.)[1] By executing the Memorandum, CMG agreed to be bound both by previously negotiated collective bargaining agreements between the Union and a regional bargaining association and by the various Trust Agreements establishing the Funds to which employers contributed. (*Id.* ¶¶ 5-7; *see also* Pls.' Stmt. ¶¶ 6-7.) The relevant Trust Agreement required each employer to "make continuing and prompt contribution to the [the Funds] in an amount equal to fifty (50) cents per hour for each hour worked" by the employer's bargaining unit employees. (Pls.' Ex. 4, Art. III, at 2; *see also* Pls.' Stmt. ¶ 7.) The relevant collective bargaining agreements reaffirmed the employer's obligation to make contributions to the Funds for each employee-hour worked. (Pls.' Ex. 6, Art. IV, at 14; Pls.' Ex. 7, Art. XII, at 14-15; Pls.' Ex. 8, Art. VI, at 12.)

Contemporaneously with the Memorandum, CMG signed a Flooring Installation Addendum (the "Addendum"), which the Union and a professional flooring association had negotiated previously. By executing the Addendum, CMG agreed to be bound by the above-described collective bargaining agreements. (Pls.' Ex. 5, at 1.) The Addendum

---

[1] Abbreviations are as follows. Plaintiffs' Rule 56.1 Statement of Facts is abbreviated "Pls.' Stmt." Defendant's L.R. 56.1 Statement Of Material Facts As To Which There Is No Genuine Issue is abbreviated "Def.'s Stmt." The exhibits that the Funds submitted in support of Plaintiffs' Rule 56.1 Statement of Facts are abbreviated "Pls.' Ex.," while those submitted by CMG are abbreviated "Def.'s Ex."

<mark>2</mark>

contained three similar provisions for healthcare coverage, one each for employees categorized as helpers, material handlers, and cleaners. (Def.'s Stmt. ¶¶ 14-16.) The provision at issue here pertains to cleaners, and states in relevant part:

> Employers agree to provide each Cleaner with either coverage under the Chicago Regional Council of Carpenters Funds or provide [*sic*] Hospital Surgical benefits under a plan to be no less favorable than "80/20" coverage. The Employer must submit to the UNION the Health Care Insurers [*sic*] name, policy number, and days of employment until covered if this plan is used.

(*Id.* ¶ 16.) CMG maintained a company-sponsored insurance plan by which it offered benefits to its employees, including its cleaners. (*Id.* ¶¶ 17-18.)

At issue in this litigation are two CMG cleaners who did not receive coverage under CMG's plan or under the Funds. The first, David Evans, signed a waiver of coverage on March 2, 2006, and told CMG that he already had insurance coverage through his wife's insurance policy. (*Id.* ¶¶ 23-24.) Randy Comchomnon, another cleaner, also signed a waiver of coverage under the insurance plan on February 11, 2007, informing CMG personnel that he already had health insurance through his parents' insurance policy. (*Id.* ¶¶ 21-22.) CMG did not make contributions to the Funds for Evans or Comchomnon and did not enroll those two cleaners in its own insurance plan.

In 2007, the Funds hired certified accountants to audit CMG (Def.'s Stmt. ¶ 29), resulting in an adjusted audit report finding that CMG owed approximately $27,000[2] in unpaid contributions to the Funds on behalf of Evans, Comchomnon, and a third cleaner

---

[2] The Funds note that they are claiming $23,129.61 in unpaid contributions and $4,625.92 in liquidated damages, the sum of which is $27,755.53, but also admit that the audit report found that CMG owed $27,773.48 in unpaid contributions and liquidated damages. The parties do not explain the discrepancy between these two figures.

3

who is no longer at issue in this litigation.³ (*Id.* ¶ 30.)⁴ The parties were unable to resolve their dispute regarding these contributions, and the Funds brought this action.

## II. LEGAL STANDARD

Summary judgment is warranted where "the pleadings, the discovery, and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *see also Brengettcy v. Horton*, 423 F.3d 674, 680 (7th Cir. 2005). All facts, and any inferences to be drawn from them, must be viewed in the light most favorable to the non-moving party. *Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 756 (7th Cir. 2008); *see also Bassiouni v. F.B.I.*, 436 F.3d 712, 721 (7th Cir. 2006) (same for cross-motions). The Seventh Circuit has repeatedly recognized that "summary judgment is particularly appropriate in cases involving the interpretation of contractual documents." *Ryan v. Chromalloy Am. Corp.*, 877 F.2d 598, 602 (7th Cir. 1989); *see also Neuma, Inc. v. AMP, Inc.*, 259 F.3d 864, 871 (7th Cir. 2001).

As the parties agree, "[w]hen considering a contract in the context of an ERISA claim, federal common law rules of interpretation apply." *Cent. States, Se. & Sw. Areas Pension Fund v. Kroger Co.*, 73 F.3d 727, 731 (7th Cir. 1996) (citations omitted). Under federal common law rules, courts should interpret documents according to their "'ordinary and popular sense as would a person of average intelligence and experience.'"

---

³ The parties briefed the issue of a third CMG cleaner, Loren Olsen, who was employed by CMG for less than 90 days, and so was never eligible to enroll in CMG's insurance plan. (Def.'s Stmt. ¶¶ 25-27.) However, at oral argument, the Funds conceded that CMG was not obligated to make any contributions to the Funds or provide benefits pursuant to CMG's plan for Olsen because he was employed by CMG for such a brief period.

⁴ The audit report also included damages for unpaid dues, contributions, and liquidated damages that the parties agree are not at issue here. (Def.'s Stmt. ¶¶ 30-31.)

4

*Neuma*, 259 F.3d at 873 (quoting *Brewer v. Protexall, Inc.*, 50 F.3d 453, 457 (7th Cir. 1995)). In interpreting an ERISA-related document, the court's "first task is to determine if the contract at issue is ambiguous or unambiguous." *Id.* While a contract with only one reasonable interpretation is unambiguous and therefore proper for summary judgment, an ambiguous contractual term requires additional proceedings to establish its meaning and thus is not a proper subject for summary judgment. *See Moriarty v. Svec*, 164 F.3d 323, 330 (7th Cir. 1998). Finally, the court must "read collective bargaining agreements with sensitivity to considerations of national labor policy." *Merk v. Jewel Food Stores Div. of Jewel Cos.*, 945 F.2d 889, 892 (7th Cir. 1991).

### III. ANALYSIS

The parties dispute whether CMG was obligated to make contributions to the Funds for Evans and Comchomnon. CMG maintains that so long as it made its insurance plan available to its cleaners pursuant to the Addendum, it was not obligated to provide healthcare coverage through the Funds by making contributions thereto. The Funds maintain that CMG was obligated to make contributions for any CMG cleaner who was not actually covered by CMG's plan.

Whether either party is entitled to summary judgment depends on the interpretation of the Addendum. CMG maintains that the Addendum's alternative that it "provide Hospital Surgical benefits under a plan to be no less favorable than '80/20' coverage" required only that it make its insurance available to its cleaners. CMG supports its position by reference to the definition of "provide." That verb has several definitions, the most relevant of which is "to supply or make available." *Merriam Webster's Collegiate Dictionary* 1001 (11th ed. 2006); *see also Am. Heritage Dictionary*

5

*of the English Language* 1411 (4th ed. 2000) (defining "provide" as "to furnish; supply . . . . To make available"). This definition accords with the Seventh Circuit's observation that "[a] promise to provide insurance is not a promise that [an employee] would receive insurance even if he did not enroll." *Kamler v. H/N Telecomm. Servs., Inc.*, 305 F.3d 672, 679 (7th Cir. 2002). Therefore, as CMG maintains, "provide" means "make available."

However, "provide" is not the only operative term in the clause at issue, and the court must interpret the agreement as a whole. *See Woodstock Indus. Corp. v. Local Union No. 922*, 699 F. Supp. 1259, 1262 (N.D. Ill. 1988) (citing *Mastro Plastics Corp. v. N.L.R.B.*, 350 U.S. 270, 279 (1956)). CMG was required to "provide Hospital Surgical benefits under a plan to be no less favorable than '80/20' coverage." "Benefits," which the Addendum required CMG to provide, and "coverage," which CMG claims to have made available to its cleaners, are not synonymous. The same dictionary on which CMG relies defines "benefit" as "financial help in time of sickness, old age, or unemployment," and, more pointedly, "a payment or service provided for under an annuity, pension plan or insurance policy." *Merriam Webster's Collegiate Dictionary* 114. As used in ERISA, and consistent with the definition above, benefits are essentially pecuniary. *Accord* 29 U.S.C. § 1132(a)(1)(B) (authorizing a plan participant or beneficiary to bring a suit "to recover benefits due to him under the terms of his plan"). Coverage, by contrast, means "inclusion within the scope of an insurance policy or protective plan." *Merriam Webster's Collegiate Dictionary* 288; *see also* Black's Law Dictionary 422 (9th ed. 2009). Coverage determines which treatments are included in an insurance plan, and

how much of the cost of each treatment is included; benefits describe the payments attendant to a covered treatment.

In this case, the Addendum requires the employer that opts not to contribute to the Funds to "provide Hospital Surgical benefits." The word "coverage" is not what must be provided under the employer option; rather, the word "coverage" functions merely to describe the type of Hospital Surgical benefits which must be provided. The plain meaning of such a provision is that the employer must provide benefits under its plan, and not merely give the employee the option of its coverage. If the employee is given the option of employer-sponsored coverage and turns it down, as happened here, then benefits are not provided. In such a situation, the employer must contribute to the Funds. This provision cannot be reasonably read to give the employer the power to allow the employee to opt out of all benefits whatsoever.

There is no evidence that CMG made benefits–that is, payments attendant to the receipt of covered treatment–available to either Evans or Comchomnon. Each cleaner executed a document entitled "Waiver (refusal of coverage)." (Pls.' Exs. H & I.) The waiver makes clear that the signatory was "given the opportunity to apply for group coverage" but nevertheless "waived any coverage offered . . . ." (*Id.*)

CMG argues that it could not force its employees to accept coverage under its insurance plan, and that making such a plan available is the most it can be required to do pursuant the Addendum. However, when Evans and Comchomnon declined coverage, CMG was still able to comply with the Addendum by making the requisite contributions to the Funds, thereby providing coverage through the Funds. For this reason, CMG's argument is unpersuasive. The available record makes clear that, for Evans and

Comchomnon, CMG did not make the requisite contributions and did not provide benefits pursuant to its own plan. Consequently, summary judgment in the Funds' favor is warranted.

## IV. CONCLUSION

For the reasons stated above, CMG's motion for summary judgment is denied, and the Funds' motion for summary judgment is granted in part and denied as moot in part.[5]

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: July 9, 2010

---

[5] At oral argument, the parties confirmed that they have not conducted discovery on and have not briefed CMG's affirmative defenses and that, should the court grant the Funds' motion, discovery on those defenses would be necessary. Therefore, the court grants the Funds' motion only on the question presented, *i.e.*, whether, based on the contract and the other evidence presented, CMG was obligated to contribute to the Funds for its employees that were not enrolled in its plan. The court expresses no opinion regarding the merits of CMG's affirmative defenses. The outstanding issue of affirmative defenses, the damage discrepancy identified in note 2 above, and the moot issue identified in note 3 above all preclude the assessment of damages at this stage.